**NOT FOR PUBLICATION**

UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

_____

STRYKER TRAUMA S.A.,            :
a Swiss corporation, and        :
HOWMEDICA OSTEONICS CORP. :
a New Jersey corporation,       :
                                :
        Plaintiffs,             :
                                :
v.                              :        Civil Action No.: 01-cv-3879 (JLL)
                                :
SYNTHES (USA),                  :        **O P I N I O N**
a Pennsylvania partnership,     :
                                :
        Defendant.              :
_____:

**LINARES,** District Judge.

        This matter comes before the Court on the motion of Defendant, Synthes (USA)

("Synthes" or "Defendant") for a new trial pursuant to Federal Rule of Civil Procedure 59(a) on

the issues of infringement and validity based upon alleged errors in jury instructions issued in

conjunction with this Court's trial regarding United States Patent No. 5,752,954 (the "'954

Patent"). No oral argument was heard. Fed. R. Civ. P. 78. For the reasons set forth herein,

Defendant's motion for a new trial is denied.

<u>**BACKGROUND**</u>

        This Court held trial on Plaintiffs' Stryker Trauma, S.A. ("Stryker") and Howmedica

Osteonics Corporation ("Howmedica") (collectively "Plaintiffs") claim that Defendant allegedly

infringed upon claims 1 and 2 of the '954 patent. Defendant asserted an affirmative defense that

-1-

the '954 patent was invalid.

The trial began on October 3, 2006 and concluded on October 25, 2006. At the conclusion of trial, the jury returned a verdict in favor of Plaintiffs on the claims of infringement and the validity of the '954 patent. The jury found that Plaintiffs had successfully carried their burden of proof as to infringement with respect to claims 1 and 2 of the '954 patent as to certain of Defendant's products.[1] (Jury Verdict, CM/ECF # 243). The jury also found that Defendant had failed to prove by clear and convincing evidence that any combination of the prior art on which Defendant relied rendered any of claims 1 and 2 of the '954 patent invalid on the basis of obviousness. (Id.).

Prior to summations, the Court conducted a two-day in camera charge conference with counsel for Plaintiffs and Defendant. The purpose of the conference was to resolve disputes regarding the proposed jury instructions requested by the Court and submitted by the parties. Some of these disputes were amicably resolved without interference of the Court and others were subject to rulings of this Court, which were placed on the record. On October 24, 2006 the Court read the final version of the jury instructions to the jury, and subsequently provided each juror with a copy of the final jury instructions.

On November 8, 2006, Defendant filed the instant motion for a new trial based upon "errors in the individual [jury] instructions, and the instructions as a whole." (Def. Br. at 1).

---

[1]Such products of Defendant are the: Synthes Combination Clamp for Large External Fixator; Synthes Medium Combination Clamp; Synthes Large Combination Clamp, MR Safe; Synthes Small Combination Clamp, Small External Fixator, MR Safe; Synthes Medium Combination Clamp, MR Safe; Synthes 8mm/11mm Combination Clamp, MR Safe; Synthes Adjustable Clamp, Mandible External Fixator System, MR Safe; Synthes Adjustable Parallel Pin Clamp, Mandible External Fixator System, MR Safe; Synthes Open Adjustable Clamp; Synthes Open Adjustable Clamp, MR Safe; and Synthes Medium Open Adjustable Clamp, MR Safe.

Plaintiffs oppose this motion and argue that no new trial is warranted.

## DISCUSSION

Defendant structures its arguments underlying its motion for a new trial into two categories.  First, Defendant argues that the jury instructions were erroneous based upon the absence of jury instructions relating to claim construction.  (Def. Br. at 2).  Second, Defendant argues that the jury instructions were erroneous as they related to obviousness.  (Id. at 2).  Accordingly, the Court will similarly structure its analysis of Defendant's motion.

### A.    Standard of Review

Federal Rule of Civil Procedure 59(a) provides that:

> [a] new trial may be granted to all or any of the parties and on all or part of the issues (1) in an action in which there has been a trial by jury, for any of the reasons for which new trials have heretofore been granted in suits in equity in the courts of the United States . . .

Fed. R. Civ. P. 59(a).  It is within the discretion of the district court whether or not to grant a new trial.  Wagner v. Fair Acres Geriatric Ctr., 49 F.3d 1002, 1017 (3d Cir. 1995).  "'[A] party seeking to alter a judgment based on erroneous jury instructions must establish that (1) it made a proper and timely objection to the jury instructions, (2) those instructions were legally erroneous, (3) the errors had prejudicial effect, and (4) it requested alternative instructions that would have remedied the error.'"  NTP, Inc. v. Research in Motion, Ltd., 418 F.3d 1282, 1311-12 (Fed. Cir. 2005) (quoting Advanced Display Sys., Inc. v. Kent State Univ., 212 F.3d 1272, 1281 (Fed. Cir. 2000)).  Thus, the burden of proof is on Defendant to establish each of these components.  Whether a jury instruction is legally erroneous is a question of law.  Ecolab, Inc. v. Paraclipse, Inc., 285 F.3d 1362, 1373 (Fed. Cir. 2002) (citing Brooktree Corp. v. Advanced Micro Devices,

-3-

Inc., 977 F.2d 1555, 1570 (Fed. Cir. 1992)).

Thus, the Court must determine whether Defendant has met the standard for a new trial based upon erroneous jury instructions set forth in NTP, 418 F.3d at 1311-12.

**B.      Absence of Instructions Related to Claim Construction**

Defendant argues that the Court should have charged the jury with additional claim constructions and further instructions relating to claim construction. Specifically, Defendant contends that the Court should have included the following instructions which pertain to construction of the '954 patent:

1.  An instruction setting forth a new claim construction from the Court which construes the "opposed surfaces" limitations in claim 1 of the '954 patent to mean that the opposed surfaces of the grooves be pressed against one another in contiguous, surface-to-surface contact by the elastic element, including, for the second "opposed surfaces" limitation, when the bar is in the passage.

2.  An instruction setting forth a new claim construction from the Court which construes the "cross-section" limitation in claim 1 of the '954 patent to refer to a linear dimension of the claimed articulation element, that is, a diameter or height or some other linear measurement, and not an area measurement.

3.  An instruction setting forth a new claim construction from the Court which construes claims 1 and 2 of the '954 patent as not including bars or pins.

4.  An instruction including the definiteness requirement found in 35 U.S.C. § 112 as it allegedly relates to the "opposed surfaces" limitations and "cross-section" limitation of the '954 patent.

5.   An instruction informing the jury that it was prohibited from re-writing the claims of the patent in order to have the patent "make sense."

6.   An instruction setting forth a new claim construction stating that the preamble to the '954 patent does not constitute a limitation of claim 1.

### 1.      Previously Requested Claim Constructions

The Court has set forth the claim construction background of this matter numerous times. However, this same claim construction history provides the context for the Court's instant analysis, and as such, will be recounted yet again.

Defendant's present motion seeks to re-litigate matters already decided by this Court in the guise of a motion for a new trial.  In April 2006, Defendant filed a motion requesting three additional claim constructions pertaining to the '954 patent.[2]  Before the Court issued its decision regarding this motion, Defendant requested leave to file an additional motion for further claim construction.[3]  The Court denied both motions by Memorandum & Order issued July 28, 2006. Although the Court determined that it did not need to reach the merits of Defendant's new claim construction arguments, the Court did find that to engage in further claim construction, with discovery having closed much earlier, would unduly prejudice Plaintiffs.  (July 28, 2006 Mem. & Order at 18).  Accordingly, the Court denied Defendant's motion for further constructions and

_____

[2]This motion sought to have the Court construe the '954 patent in a manner such that the asserted claims of the patent are all directed to articulation elements alone, that the language of claim 1 requires that the "opposed surfaces" of the grooves be pressed against one another in contiguous, surface-to-surface contact by the elastic element, and that each "cross-section" recited in claims 1 and 9 refers to a linear cross-section of the identified item.

[3]Defendant sought leave to file a motion which would request the Court to construe that the preamble of the '954 patent did not constitute a limitation.

denied Defendant's request for leave to file an additional claim construction motion.  The Court

further refined its position with respect to requests for further claim construction in its

Memorandum filed on September 22, 2006 which addressed certain motions in limine filed prior

to the start of trial and also prior to this Court's July 28, 2006 Memorandum & Order.  Further,

throughout the course of the trial, the Court, during side bar discussions and otherwise,

repeatedly and consistently declined Defendant's evidentiary requests pertaining to further claim

constructions, up until, and throughout, the jury charge conference and the ultimate provision of

the instructions to the jury.

    For these reasons, with respect to Defendant's argument that this Court erred by declining

to issue further claim constructions on the "opposed surfaces" limitation/s, the "cross-section"

limitation, the preamble to the '954 patent, and the issue of whether or not the language of claims

1 and 2 claim a bar or rod, this Court reaffirms its earlier rulings issued in its Memorandum &

Order, a subsequent Memorandum, and at trial, that Defendants are not entitled to further claim

constructions.  Accordingly, to the extent that Defendant's Rule 59(a) motion is based upon these

arguments, it is denied.[4]

    **2.    Inoperability Instruction**

    Defendant's motion is also based on its argument that it was erroneous for the Court not

to instruct the jury "that the potential inoperability of properly construed claims should not affect

their claim construction and the subsequent infringement inquiry."  (Def. Br. at 8).  Defendant

argues that without such an instruction, it is "highly likely that the jury (1) incorrectly viewed the

---

[4]This determination applies to the first three requested claim construction instructions set
forth above by the Court.

'opposed surfaces' limitations in light of both the accused products and Stryker's alleged

commercial embodiments, (2) erroneously decided that a requirement of actual contact did not

make sense in the context of these products, and (3) mistakenly concluded that the claims must

not require actual contact." (Id. at 8).  Defendant argues that without being provided an

instruction related to inoperability, the jurors likely approached the question of infringement

incorrectly which "almost certainly resulted in prejudice" to Defendant.  (Id. at 8-9).

Plaintiffs oppose Defendant's motion as it relates to this inoperability instruction for the

reason that the applicable law does not support a nonsensical claim construction.  (Pl. Br. Opp'n

at 17).  Plaintiffs argue that if the Court were to embrace Defendant's proposed claim

construction as it relates to the "opposed surfaces" limitation, such construction would be

nonsensical and should be rejected in favor of the Plaintiffs' construction which Plaintiffs argue

renders the claim operable and is consistent with the preferred embodiment.  (Id. at 16).

Defendant has not established that the absence of a jury instruction regarding potential

inoperability was legally erroneous.  See NTP, 418 F.3d at 1311-12.  Rather, Defendant's

argument focuses on the fact that court *could have* chosen to provide such an instruction, not that

the Court's decision to omit same was legally erroneous.  Further, assuming arguendo that the

lack of such an instruction was erroneous, if its presence could not have changed the jury's

verdict on infringement, then no new trial would be warranted.  NTP, 418 F.3d at 1312 (citing

Environ. Prods., Inc. v. Furon Co., 215 F.3d 1261, 1266-67 (Fed. Cir. 2000)).  Even if the jury

had been provided an instruction on what Defendant terms "inoperability," there was

nevertheless sufficient evidence in the record to support the jury's finding of infringement.

Defendant argues that the jury "likely resolved the infringement question by comparing [the

Plaintiffs' alleged commercial embodiments and the accused products]" instead of comparing the accused products to the limitations of the asserted claims. (Def. Br. at 8, n.4). However, such a statement is based on pure speculation and is insufficient to constitute the basis for a new trial. Defendant does not acknowledge that with the context of the claim construction provided by the Court, the jury still could have relied upon testimony from Plaintiffs' expert Dr. Albert H. Burstein to reach its verdict of infringement. Further, the very essence of Defendant's argument presupposes that this Court had also issued Defendant's requested claim construction on "opposed surfaces" which the Court denied before and during trial, as well as supra in this Opinion.

Accordingly, since Defendant has failed to carry its burden of proof on its entitlement to a new trial, this Court denies Defendant's motion inasmuch as it is premised on the Court's decision not to charge the jury on potential inoperability of claims 1 and 2 of the '954 patent.

### 3.        Indefiniteness Instruction

Defendant's motion is also based upon the absence of a jury instruction on the standard for definiteness which Defendant wished to be included in the final jury instructions. Defendant sought such an instruction because Defendant wished to assert that claims 1 and 2 of the '954 patent were invalid because the language of these claims was indefinite. Plaintiffs oppose Defendant's motion on the ground that Defendant waived such a defense, and thus, such an instruction would have been inappropriate.

As Defendant acknowledges, an indefiniteness assertion was first raised in Defendant's April 13, 2006 motion for additional claim constructions which this Court denied. This issue also arose during trial, wherein the Court again stated its position that since Defendant had not

properly preserved such an invalidity defense with respect to claims 1 and 2 of the '954 patent,

Defendant was barred from asserting an indefiniteness defense at such a late hour.  (Tr. 1.24:3-

24).  Also, as Plaintiffs argue, indefiniteness was not mentioned in the list of legal issues

preserved by the parties in the Final Pretrial Order entered on September 28, 2006.  Accordingly,

Defendant sought to have this Court issue an instruction which did not relate to any live legal

issue in the case, and the Court appropriately declined this request.  The absence of such an

instruction, therefore, could not render the remaining instructions legally erroneous.  For these

reasons, Defendant's motion for a new trial, inasmuch as it is based on the absence of an

instruction relating to indefiniteness, is denied.

## C.    Absence of Obviousness Instructions

        Defendant also moves for a new trial based upon the absence of jury instructions on the

issue of obviousness.  Defendant asserts that the jury instructions provided to the jury were

legally erroneous since the instructions provided to the jury regarding obviousness were

incomplete and misleading.

        Under patent law, a Defendant in an infringement case may assert a claim of invalidity of

the patent-in-suit based on obviousness.  A claim in an issued patent may be held invalid for

obviousness where the difference between what is claimed and what is taught by the prior art is

such that the claimed invention would have been obvious to a person of ordinary skill in the art at

the time of the invention. 35 U.S.C. § 103.[5]  In this case, if Defendant were to succeed on its

_____

        [5]This section provides in relevant part:

                A patent may not be obtained though the invention is not identically disclosed or
                described as set forth in section 102 of this title, if the differences between the
                subject matter sought to be patented and the prior art are such that the subject

claim of invalidity, it must have proven by clear and convincing evidence that the subject matter

of claims 1 and 2 of the '954 patent would have been obvious to a person with ordinary skill in

the art at the time the invention was made.  This Court instructed the jury that it must follow the

following procedure:

> First, you must assess the following four factors, based upon the facts that
> defendant Synthes has established by clear and convincing evidence, that is, that
> they are highly probable of being true:
>
>> 1. First, you must determine the scope and content
>> of the prior art relied upon by Synthes.
>> 2. Second, you must then identify the differences, if any, between
>> each asserted claim and the prior art.
>> 3. Third, you must determine the level of ordinary skill in the
>> pertinent art at the time the invention of the '954 patent was made.
>> 4. Fourth, you must also consider whether there are any
>> "secondary" considerations – otherwise known as "objective"
>> considerations – relating to the obviousness determination.  I will
>> explain the nature of such "secondary" or "objective"
>> considerations later.

(Final Jury Instructions at 48-49).[6]  The Court then instructed the jury that since Defendant was

also "asserting that the claimed invention was invalid for obviousness based on a combination of

prior art references," the jury must also consider the following question: "[w]ould a person

having ordinary skill in the art at the time the claimed invention was made have been aware of

_____

> matter as a whole would have been obvious at the time the invention was made to
> a person having ordinary skill in the art to which said subject matter pertains.
> Patentability shall not be negatived by the manner in which the invention was
> made.

35 U.S.C. § 103(a).

[6]Citations to the Final Jury Instructions refer to the document provided to the jury on
October 24, 2006.

some motivation, suggestion or teaching to combine, or to modify, this prior art and arrive at the claimed invention?" (Id. at 49). This latter instruction immediately followed the four listed factors. (Id.). The Court then instructed the jury that against the background just provided, that is, the four factors and the question just posed, whether each asserted claim of the '954 patent "would have been obvious to a person of ordinary skill in the pertinent art at the time of the invention." (Id.).

Defendant specifically takes issue with the additional question related to the motivation to combine the prior art, as well as the fourth factor listed which is related to secondary considerations. The Court will address such objections separately.

### 1.      Motivation to Combine

Defendant seeks a new trial based upon this Court's jury instructions on the "motivation, suggestion or teaching" requirement. Defendant argues that the jury instructions erroneously "suggested that the 'motivation, suggestion or teaching' requirement is a factor that must be weighed along with the others." (Def. Br. at 18). In support of this statement, Defendant refers to a portion of the jury instructions which states: "[i]n reaching your ultimate determination as to obviousness, you must weigh together the factors that I have just listed for you. For example, you should consider the level of ordinary skill in the art in assessing whether a motivation, suggestion, or teaching to combine prior art references existed." (Final Jury Instructions at 49). Defendant contends that this instruction improperly depicts the "motivation, suggestion or teaching requirement" as one of these "factors." (Def. Br. at 18).

Defendant also objects to this portion of the jury instructions on the basis that the jury instructions did not properly instruct the jury how easily the "motivation, suggestion or teaching"

requirement can be satisfied.  (Id. at 18).  Specifically, Defendant asserts that the Court created a misconception for the jury that the "motivation, suggestion or teaching" requirement must originate within the prior art, when the law provides that prior art is only one of many sources.  (Id. at 19).  For instance, Defendant argues that the Court failed to appropriately instruct the jury how "common knowledge and common sense" can constitute a source of motivation.  (Def. Br. at 20).  Defendant argues that the Court rendered "common knowledge and common sense" into "throw-away words" in the jury instructions.  (Def. Br. at 21).  Lastly, Defendant contends that the Court's decision not to specifically instruct the jury about the "nature of the problem to be solved" failed "[t]o clarify that the motivation, suggestion or teaching may come from a different problem than that facing the inventor."  (Def. Br. at 22).  Further, following the Supreme Court decision in KSR Int'l Co. v. Teleflex Inc., et al., 127 S.Ct. 1727 (2007), Defendant submitted a statement of supplemental authority to the Court, urging therein that the decision has "significant implications" for Defendant's post-trial motions.  (Def. Supp. Auth. at 1).  Specifically, Defendant argues that the jury instructions were erroneous because they instructed the jury that application of the TSM test was mandatory and noted Defendant's burden of proving same by clear and convincing evidence. (Id. at 1, n. 1).

Plaintiff opposes Defendant's request for a new trial based upon allegedly erroneous jury instructions relating to motivation to combine.  Plaintiffs maintain that the jury instructions provided properly advised the jury of the issues and the law, and that Defendant's argument takes instructions out of their proper context, challenges instructions proposed by Defendant itself, or misinterprets the instructions.  (Pl. Br. Opp'n at 28).  Plaintiffs address each disputed instruction in their brief and note that such instruction: was included at Defendant's direction, was taken out

of context, ignored prior or surrounding instructions, or existed when Defendant claimed same was omitted.  Plaintiffs argue that, taking the obviousness instructions as a whole, Defendant has failed to carry its burden of proof that the instructions were incorrect and prejudicial.  (Pl. Br. Opp'n at 31).  This Court agrees.

Although a jury instruction must properly apprise the jury of the law, such an analysis is conducted of the jury instructions *as a whole*.  Limbach Co. v. Sheet Metal Workers Int'l Ass'n, 949 F.2d 1241, 1259 n. 15 (3d Cir. 1991) (en banc), (citing Link v. Mercedes-Benz of North America, Inc., 788 F.2d 918, 922 (3d Cir. 1986)).  "When interpreting jury instructions, the reviewing court considers the totality of the instructions and not a particular sentence or paragraph in isolation."  Limbach, 949 F.2d at 1259 n.15 (citing In re Braen, 900 F.2d 621, 626 (3d Cir. 1990), cert. denied, 498 U.S. 1066 (1991)).  "Failure to instruct the jury as requested does not constitute error so long as the instruction, taken as a whole, properly apprises the jury of the issues of the applicable law."  Limbach, 949 F.2d at 1259, n. 15 (citing Gutzan v. Altair Airlines, Inc., 766 F.2d 135, 138 (3d Cir. 1985)).  Further, "[h]armless errors in parts of a jury charge that do not prejudice the complaining party are not sufficient grounds on which to vacate a judgment and order a new trial."  Armstrong v. Burdette Tomlin Memorial Hosp., 438 F.3d 240, 246 (3d Cir. 2006) (citing Watson v. S.E. Penn. Transp. Auth., 207 F.3d 207, 221-22 (3d Cir. 2000)).

Applying this legal standard to the matter at hand, the Court determines that Defendant is not entitled to a new trial based upon allegedly erroneous jury instructions pertaining to motivation to combine.  To the extent that Defendant argues that the Court improperly characterized motivation to combine as a fifth "factor" that the jury must consider along with the

-13-

others, the Court disagrees with this contention.  The jury instructions listed the four Graham[7]

factors and specifically referred to them as "factors."  (Final Jury Instructions at 48).  Then, the

Court instructed the jury that it must also consider the *question* related to motivation to combine.

(Id. at 49).  Thus, when the Court subsequently instructed the jury to weigh together the *factors*

just listed, this instruction referred to the Graham factors, and not the motivation to combine

question.  (Id.).  Accordingly, viewing the jury instructions as a whole, the Court finds that these

instructions were not legally erroneous and Defendant is thus not entitled to a new trial.  The

Supreme Court decision in KSR does not change this result.  Contrary to Defendant's assertions

in its statement of supplemental authority, the Supreme Court in KSR did not issue a broad

prohibition on future application of the TSM test.  Rather, the Court merely cautioned against

turning the TSM test into a "rigid and mandatory formula."  127 S.Ct. at 14.  Defendant fails to

establish that the instructions given on this issue invite the jury to apply the test in such a manner.

Defendant also argues that it is entitled to a new trial based on an absence of instructions

pertaining to the concept of "common knowledge and common sense" as a source of motivation.

(Def Br. at 20-21).  Defendant contends that the Court downplayed the importance of this source

and left the jury unable to apply the concept to the evidence before it.  (Id.).  The Court has

reviewed the instructions at issue and determines that Defendant has failed to establish that same

were legally erroneous or that they had any prejudicial effect.   NTP, 418 F.3d at 1311-12.  In

fact, with respect to one of Defendant's arguments, it even concedes that the "instruction was not

erroneous in [sic] of itself." (Def. Br. at 21).  The Court has reviewed Dystar Textilfarben GmbH

& Co. Deutschland KG v. C.H. Patrick Co., 464 F.3d 1356 (Fed. Cir. 2006) again, and concludes

---

[7]Graham v. John Deere Co. of Kansas City, 383 U.S. 1, 17-18 (1966).

-14-

that the instructions provided to the jury on obviousness, when taken as a whole, properly

instructed the jury on the applicable law.  The Court charged the jury before counsel made

summations.  Thus, of course, counsel was free during summations to expand upon the

obviousness instructions and "fill in any gaps" in the instructions it may have perceived to exist.

Accordingly, to the extent that Defendant's motion for a new trial was based upon instructions

allegedly erroneous with respect to the concept of "common knowledge and common sense" due

to a lack of instructions on this topic, Defendant's motion is denied.

   Defendant's final argument pertaining to the obviousness jury instructions relates to the

Court's failure to give an instruction related to the "nature of the problem to be solved" as a

source of motivation.  (Def. Br. at 21-22).  Defendant proposed the following instruction, which

the Court declined to give to the jury: "In this regard, a motivation, suggestion, or teaching to

combine references may be shown from the existence in the prior art of a problem that is

different from the problem addressed by the inventors of the '954 patent."  (Synthes' Final

Corrected Jury Instructions at 107).  Defendant contends that without such an instruction being

provided, "the jury was left to believe that the Hybrid's use of a spring could not provide

suggestion or teaching because it was aimed at solving a 'looseness' problem rather than

achieving a snap-on, click effect."  (Def. Br. at 22).

   Plaintiffs oppose this portion of Defendant's motion on the basis that the Court did, in

fact, provide instructions related to the nature of the problem to be solved, even if same were not

the exact instructions proposed by Defendant.  In support, Plaintiffs reference the section of the

jury instructions titled "Use of Single Reference to Prove Obviousness."  (Jury Instructions at

55).  There, the Court instructed the jury that the "suggestion, motivation, or teaching can be

derived from, for example: . . . 3. the nature of the problem to be solved."  (<u>Id.</u> at 55).  The Court

subsequently repeated this statement and expanded upon it within the section of the instructions

titled "Requirement of a Teaching, Suggestion, or Motivation to Combine Prior Art References."

(<u>Id.</u> at 57).  There, the Court instructed the jury that "[a]s long as some motivation, suggestion, or

teaching to combine the references is provided, the law does not require that the references be

combined for the reasons contemplated by the inventors of the '954 patent."  (<u>Id.</u> at 58).

The Court concludes that this last sentence obviates the need for the additional instruction

proposed by Defendant since although differently worded, the instruction nevertheless indicates

that the motivation to combine may be premised upon a problem different than that solved by the

inventors of the '954 patent.  Although Defendant requested a differently-worded instruction, the

Court notes that "[f]ailure to instruct the jury as requested does not constitute error so long as the

instruction, taken as a whole, properly apprises the jury of the issues of the applicable law."

<u>Limbach</u>, 949 F.2d at 1259, n. 15 (citing <u>Gutzan</u>, 766 F.2d 135, 138 (3d Cir. 1985)).  Here,

Defendant has failed to demonstrate that the jury instructions on motivation to combine, when

taken as a whole, fail to apprise the jury of the issues of the applicable law.  Accordingly,

Defendant's motion for a new trial is denied insofar as it is based upon jury instructions related to

the "nature of the problem to be solved."

### 2.    Secondary Considerations

Defendant also seeks a new trial on the basis that the jury instructions on the topic of

secondary considerations were legally erroneous.  Defendant argues that the instructions

contained three specific errors: 1) the instructions improperly elevated the importance of

secondary considerations and allowed that the secondary considerations might trump the <u>Graham</u>

factors; 2) the instructions did not fully and correctly explain the nexus requirement and the

relevant burdens; and 3) the instructions merely mentioned, but failed to explain near

simultaneous invention.  Generally, Plaintiffs oppose Defendant's motion for the reasons that 1)

the Court used Defendant's proposed jury instructions for the secondary considerations

instructions and 2) Defendant waived its objections to the instructions before they were given to

the jury.

### a.        Importance of Secondary Considerations

Defendant argues that despite the limited evidence before the jury on the issue of

secondary considerations, the jury instructions on this topic improperly elevated the importance

of such considerations.  Defendant also contends that the instructions "failed to advise the jury as

to the proper role of secondary considerations in the obviousness analysis."  (Def. Br. at 23).

Specifically, Defendant argues that the instruction given improperly suggested that secondary

considerations may trump the principal Graham factors, preventing the jurors from correctly

undertaking the obviousness analysis.  (Id. at 23).  Defendant further argues that since only

limited evidence pertaining to "unexpected results," "industry acceptance," and "long felt need"

was introduced at trial, the Court should not have instructed the jury that it could consider these

considerations.  (Id. at 23).

Plaintiffs oppose this portion of Defendant's motion on the basis that the majority of the

instructions related to secondary considerations came from Defendant's own proposed

instructions and because the instructions, when taken as a whole, properly instructed the jury as

to the role played by secondary considerations in an obviousness analysis.  Further, Plaintiffs

disagree with Defendant's contention that Plaintiffs introduced only limited evidence on the

secondary considerations of "unexpected results," "industry acceptance," and "long felt need."
With respect to "unexpected results," Plaintiffs note that the inventor, Jacques Mata, testified
regarding the unexpected results achieved by the invention.

    As set forth <u>supra</u>, "[a] party seeking to set aside a judgment based on erroneous jury
instructions must establish that '(1) it made a proper and timely objection to the jury instructions,
(2) those instructions were legally erroneous, (3) the errors had prejudicial effect, and (4) it
requested alternative instructions that would have remedied the error.'" <u>NTP</u>, 418 F.3d at 1311-
12 (citation omitted).

    With respect to Defendant's contention that the instructions improperly suggested that
secondary considerations may trump the <u>Graham</u> factors, the Court finds that Defendant has
failed to carry its burden of proof with respect to this argument.  <u>NTP</u> requires that Defendant
have "requested alternative instructions that would have remedied the error."  418 F.3d at 1311-
12. However, here the instruction proposed by Defendant and cited to in Defendant's brief,
would not have remedied the error alleged by Defendant.  The proposed instruction is as follows:

> You *may* conclude, for example, that the evidence of secondary considerations
> presented by plaintiff Stryker is not sufficient to override other evidence presented
> by defendant Synthes showing that the claimed invention is obvious.  Or, you *may*
> conclude that the evidence of secondary considerations presented by plaintiff
> Stryker supports a finding of nonobviousness notwithstanding the other evidence
> of obviousness presented by defendant Synthes.

(Def. Br. at 24) (citing Docket #230 at 119-120) (emphasis added).

    Putting aside Plaintiffs' argument that Defendant waived this specific objection to the
jury instructions, the Court notes that this proposed instruction would not have remedied the
asserted error as required.  Rather, the instruction clearly *allows* the jury to weigh whether

evidence of secondary considerations is sufficient to override evidence introduced by Defendant, presumably related to the Graham factors.  The second part of the proposed instruction reiterates this sentiment, expressly permitting jurors to conclude the secondary considerations can support a finding of nonobviousness "notwithstanding other evidence of obviousness."  (Docket #230 at 119-120).  Defendant clearly fails to meet its burden under the NTP standard since its proposed instruction would fail to remedy the alleged error in the instructions.  Accordingly, Defendant's motion for a new trial is denied insofar as it is based on this particular argument.

Defendant also argues that because no evidence was presented at trial regarding the secondary considerations of unexpected results, industry acceptance and long felt need, the jury instructions' mention of the legal standards applicable to these considerations was erroneous.  However, Plaintiffs' opposition to this portion of Defendant's motion is well-taken.  With respect to industry acceptance, Plaintiffs argue that substantial evidence at trial was offered on this consideration, including evidence that surgeons, sales representatives and industry participants praised and used the Plaintiffs' products.  (Pl. Br. Opp'n at 39).  With respect to long felt need, Plaintiffs contend that the Court merely adopted the instruction proposed by Defendant on this consideration and that Defendant itself had submitted evidence at trial that the '954 patent satisfied the long felt need for a solution to certain aspects of looseness present in lateral entry clamps used with circular rods.

First, the jury instructions specific to these considerations consisted of a total of four sentences, and thus cannot fairly be described as "lengthy" or "prominent."  (Def. Br. at 22).  Secondly, as Plaintiffs note, evidence was introduced at trial related to unexpected results and industry acceptance.  Accordingly, with respect to unexpected results and industry acceptance,

the instructions were proper and do not merit Defendant a new trial.

With respect to the instruction on long felt need, the Court finds that Defendant has failed to establish that such an instruction was prejudicial.  The instruction, in its entirety, reads:

> If Stryker has shown a long felt need in the art which was satisfied by claims 1 or 2 of the '954 patent and not addressed by the prior art, this may indicate that the invention would not have been obvious.  However, if you were to conclude that there was no long-felt need in the field of external fixation or that the long-felt need was satisfied due to advances in unrelated technology, then Stryker would have not have carried its burden of proof on this factor.

(Final Jury Instructions at 63-64).  At the time of the charge conference in this matter, Defendant set forth two objections to Plaintiffs' proposed instruction on this issue.  First, Defendant objected to any instruction on long-felt need being given to the jury.  Second, Defendant objected to the form offered by Plaintiffs and instead offered the instruction which the Court ultimately implemented.  The Court finds that Defendant has failed to demonstrate that it suffered prejudice from this instruction on long-felt need as required by  NTP, 418 F.3d at 1311-12. Undeniably, there was evidence introduced at trial with respect to an alleged long-felt need in the external fixation industry for an invention which would address the issue of circular rods loosely fitting in a lateral entry clamp.  Plaintiffs and Defendant separately argued that their inventions did just that, albeit with different "spins."  The instruction on this issue was a proper statement of the law, and taken within the larger context of the secondary considerations instructions and the amount of evidence introduced at trial on these considerations, the Court cannot conclude that the a two-sentence instruction on long-felt need persuaded the jury to find for Plaintiffs on the issue of obviousness.  Accordingly, Defendant's motion for a new trial is denied inasmuch as it relates to the importance of certain secondary considerations.

### b.      Nexus Requirement and Relevant Burdens

Defendant argues that the jury instructions failed to fully and understandably instruct the jurors on the nexus requirement, including how it should be applied to each of the secondary considerations and Stryker's burden to show a nexus before the jury can evaluate any particular secondary consideration.  Defendant also sets forth specific challenges to the instructions pertaining to commercial success.  Defendant argues that this "critical instruction entirely omits the requirement that the commercial success be attributable to a feature claimed in the patent that was not readily available in the prior art."  (Def. Br. at 25).

Plaintiffs oppose this portion of Defendant's motion on the basis that the instruction given on the nexus requirement was both agreed upon by the parties and was a correct statement of the law.  Plaintiffs also disagree with Defendant's contention that the instructions pertaining to commercial success were erroneous.  Rather, Plaintiffs contend that the instruction given closely follows the applicable Federal Circuit precedent set forth in J.T. Eaton & Co. v. Atlantic Paste & Glue Co., 106 F.3d 1563, 1571 (Fed. Cir. 1997) and was thus proper.  Further, Plaintiffs argue that Defendant's argument regarding whether the feature in the claimed patent was readily available in the prior art is irrelevant since the prior art relied upon by Defendant did not offer the ability to snap in rods with perpendicular pressure against the force of the spring.  (Pl. Br. Opp'n at 38).  Thus, Plaintiffs argue that such an instruction was unnecessary.

In the introductory instructions pertaining to secondary considerations, the Court instructed the jury on the nexus requirement.  The Court instructed the jury that:

> With regard to the secondary considerations that may be relevant to
> nonobviousness, there must be a connection or a "nexus" between the evidence
> and the claimed invention if this evidence is to be given weight by you in arriving

at your conclusion on the obviousness issue.  Plaintiff Stryker bears the burden of
proving by a preponderance of the evidence, that is, it is more likely than not, a
nexus between the claimed invention and each secondary consideration regarding
nonobviousness.

(Final Jury Instructions at 61).  Defendant alleges that this instruction was erroneous because it

was not repeated before each listed secondary consideration and because "there was no

explanation as to how precisely the nexus requirement should be applied to each of the secondary

considerations and how Stryker's burden to show a nexus before any particular secondary

consideration must be evaluated."  (Def. Br. at 24).  However, the Court determines that this

global instruction on the nexus requirement sufficiently informed the jury how to proceed with

its analysis of secondary considerations and nonobviousness.  Further, the Court determines that

providing such a global instruction obviated the need for the Court to reiterate the nexus

requirement with respect to each secondary consideration listed in the instructions.  The global

instruction specifically instructed the jury that Plaintiff must prove the existence of a nexus

"between the claimed invention and *each* secondary consideration." (Final Jury Instructions at

61) (emphasis added).  Although the Court did not instruct the jury as Defendant requested,

taking the jury instructions related to nonobviousness as a whole, the Court finds that these

instructions properly apprise the jury of the issues of the applicable law.  Limbach, 949 F.2d at

1259, n. 15 (citing Gutzan, 766 F.2d at 138).  Accordingly, Defendant's motion is denied with

respect to this basis.

Defendant also argues that the jury instructions pertaining to commercial success were

erroneous since they omitted a portion of the pertinent legal standard.  Defendant contends that

the instruction given was erroneous since it failed to instruct the jury regarding "the requirement

that the commercial success be attributable to a feature claimed in the patent that was not readily available in the prior art."  (Def. Br. at 25).  Defendant also claims that the instructions pertaining to commercial success were plainly contrary to law since the instructions stated that the jury could presume a causal connection when rather the law places such a burden on the patentee. (Id. at 26) (quoting J.T. Eaton, 106 F.3d at 1571).

Plaintiffs oppose this position and argue that the jury instruction on establishing nexus for commercial success was correct.  Plaintiffs contend that Defendant's reliance on the statement from the J.T. Eaton case is improper since such statement was taken out of context.  Rather, Plaintiffs argue that J.T. Eaton supports, and is consistent with, the instructions provided by the Court on this issue of law.  (Pl. Br. Opp'n at 36).  Plaintiffs argue that since they met their burden of establishing that their Hoffman II clamps and the accused clamps were coextensive with claims 1 and 2, the presumption instruction was proper.  (Id. at 37).

The Court did not expressly charge the jury the exact language in J.T. Eaton which Defendant desired, namely, that "the asserted commercial success of the product must be due to the merits of the claimed invention beyond what was readily available in the prior art."  J.T. Eaton, 106 F.3d at 1571.  However, the Court did instruct the jury as follows:

> To demonstrate that products sold by plaintiff Stryker or defendant Synthes enjoyed commercial success due to the merits of the claimed invention, there must be a causal connection or a nexus between the commercial success of the product and the claimed invention.  The causal connection is presumed where there is a showing of commercial success and a showing that the successful product is the invention disclosed and claimed in the patent.  It is plaintiff Stryker's burden to establish that the products sold are coextensive with or covered by the patent.  If you find that products sold by plaintiff Stryker or defendant Synthes enjoyed commercial success, and that those products were the invention disclosed and claimed in the '954 patent, you may presume that there is a causal connection or nexus.  In that event, the burden is on defendant Synthes to rebut this presumption

-23-

> by providing evidence that the commercial success of the product is due to factors
> other than the patented invention.  Keep in mind that plaintiff Stryker is not
> required to prove that commercial success is not due to other factors, but it is
> Stryker's burden to establish that the products sold are coextensive with or
> covered by the '954 patent.

(Final Jury Instructions at 62-63).  In J.T. Eaton, the Federal Circuit cited to Demaco Corp. v.

Von Langsdorff Licensing Ltd., 851 F.2d 1387, 1392-93 (Fed. Cir. 1988) for the proposition that

"[w]hen a patentee can demonstrate commercial success, usually shown by significant sales in a

relevant market, and that the successful product is the invention disclosed and claimed in the

patent, it is presumed that the commercial success is due to the patented invention."  J.T. Eaton,

106 F.3d at 1571.  Thus, the presumption referenced in the jury instructions given for

commercial success is correct as a matter of law.  The Court hereby denies Defendant's motion

for a new trial inasmuch as it is premised upon instructions pertaining to commercial success.

### c.      Near Simultaneous Invention

Defendant argues that given the substantial time devoted at trial by both parties to the

concept of near simultaneous invention, the jury instructions on this topic was lacking.

Specifically, Defendant argues that the instructions failed to explain how near simultaneous

invention was to be evaluated nor why it is relevant to the obviousness analysis.  Defendant

contends that without being given the lengthier and more detailed instruction proposed by

Defendant, the jury was unable to fully understand apply the evidence of near simultaneous

invention presented at trial.  (Def. Br. at 28).

Plaintiff opposes this portion of Defendant's motion on the basis that Defendant now

seeks to attack an instruction which it agreed upon, and the Court adopted.  (Pl. Br. Opp'n at 39).

Plaintiffs argue that Defendant waived its objection to this instruction and submitted a revised

instruction to the Court on October 23, 2006 which the Court adopted.

   The jury instructions relevant to near simultaneous invention are set forth in the section of

the jury instructions titled "Secondary or Objective Considerations Regarding Obviousness."

The instructions pertaining to near simultaneous invention were the seventh, and final, secondary

consideration listed in this section.  The instruction in its entirety is as follows:

> In reaching your determination on the issue of obviousness, you should also
> consider whether the subject matter of the invention was invented independently
> by other persons, either before the inventors of the patent-in-suit or at about the
> same time.  Evidence that others independently developed the claimed invention
> at or near the time that the inventors did may show that the claimed invention was
> obvious.  Such evidence is relevant to a determination of the level of knowledge
> in the art at the time the invention was made.

(Final Jury Instructions at 64).  The instruction proposed by Synthes was comprised of this exact

language but also included a second paragraph containing language which set forth Defendant's

specific contentions with respect to near simultaneous invention.

   The Court determines that Defendant has failed to carry its burden of establishing that the

instruction provided to the jury was legally erroneous.  "Failure to instruct the jury as requested

does not constitute error so long as the instruction, taken as a whole, properly apprises the jury of

the issues of the applicable law."  Limbach, 949 F.2d at 1259, n. 15 (citing Gutzan, 766 F.2d at

138).  Defendant has not pointed to any case law which supports its argument that the Court must

also summarize a party's specific contentions and present them to the jury in conjunction with

the jury instructions, nor that any failure to do so renders the instructions erroneous as a matter of

law.  Accordingly, Defendant's motion for a new trial is denied inasmuch as it is based upon jury

instructions pertaining to near simultaneous invention.

## <u>CONCLUSION</u>

For the reasons stated above, Defendant's motion for a new trial is denied.  An appropriate Order accompanies this Opinion.


DATED: June 27, 2007                              __/s/ Jose L. Linares_____
                                                          United States District Judge

-26-